1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RUSSELL G. DUNSWORTH,

                     Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

               Defendant.

Case No. C09-5256BHS-KLS

REPORT AND RECOMMENDATION

Noted for August 13, 2010

Plaintiff, Russell G. Dunsworth, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 49 years old.[1] Tr. 39. He has a high school education plus two years

_____

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION - 1

of college coursework, and past work experience as a maintenance worker and grounds keeper. Tr. 33-34, 113, 118, 136, 414, 422.

On December 30, 2005, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of April 22, 1999, due to a herniated lumbar disc, problems with his lower back, arthritis in his right knee and throughout his body, diabetes, and a heart attack. Tr. 28, 89-91, 112, 382, 421, 686.  His applications were denied initially and on reconsideration. Tr. 28, 39-40, 46, 51, 354-56, 360, 694-96, 700.

A hearing was held before an administrative law judge ("ALJ") on May 14, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 706-38.  Also at the hearing, plaintiff amended his alleged onset date of disability to January 1, 2006. Tr. 28, 711.  On July 22, 2008, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)     at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of disability;

(2)     at step two, plaintiff had "severe" impairments consisting of back pain status post fusion surgery, status post right knee surgery, diabetes mellitus, asthma, status post myocardial infarction with stent placement, and depression;

(3)     at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     after step three but before step four, plaintiff had the residual functional capacity to perform less than the full range of sedentary work, with certain additional non-exertional limitations[3];

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 2

(5)     at step four, plaintiff was unable to perform his past relevant work; and

(6)     at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 28-35.  Plaintiff's request for review was denied by the Appeals Council on March 27, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 11; 20 C.F.R. § 404.981, § 416.1481.

On May 1, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3).  The administrative record was filed with the Court on September 30, 2009. (Dkt. #14).  Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a)     the ALJ failed to include all of plaintiff's limitations in his assessment of plaintiff's residual functional capacity;

(b)     the hypothetical question the ALJ posed to the vocational expert at the hearing was defective; and

(c)     the ALJ failed to ask the vocational expert whether his testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the

REPORT AND RECOMMENDATION - 3

record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.  Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

REPORT AND RECOMMENDATION - 4

In late March 2006, after conducting an examination of plaintiff, Pradeep Suri, M.D., opined in relevant part:

> The claimant could be expected to sit for a full eight-hour workday. He will need breaks every half-an-hour, to get up and change positions for at least 2-5 minutes, to relieve strain on his lower back, in addition to normal breaks.

Tr. 588. In his decision, the ALJ assessed plaintiff with the following RFC:

> **. . . the claimant has the residual functional capacity to perform less than the full range of sedentary work . . . The claimant could sit for an eight-hour workday with normal breaks. However, he would need breaks every half hour to change positions to relieve strain on his lower back. The claimant could stand and walk for a cumulative total of two hours in an eight-hour workday (with normal breaks). The claimant could do occasional bending, stooping, and crouching. He has no limitations in reaching, handling, feeling, grasping, and fingering.**

Tr. 32 (emphasis in original). In so finding, ALJ stated that "Dr. Suri essentially provided" the same RFC as he himself had assessed, that Dr. Suri's opinion was "consistent with the record" and thus that he gave it "significant weight." Tr. 33.

Plaintiff argues the ALJ inaccurately interpreted Dr. Suri's opinion regarding his need for taking breaks. Specifically, whereas the ALJ interpreted it to mean that in addition to normal breaks, plaintiff would need to take a break from sitting (but not from working) by getting up and changing positions every half-hour for two to five minutes, the more reasonable interpretation of that opinion is that plaintiff would need to take an actual two-to-five minute break (during which he would get up and change positions, but not work) in addition to normal breaks. How the ALJ interpreted this opinion is important plaintiff points out, because the vocational expert testified at the hearing that an individual who needed to take an actual break from working for two-to-five minutes every half-hour, "probably would [be] precluded [from] work," and because the ALJ himself was of the opinion that it was "almost . . . a matter of law" that work would be precluded if Dr. Suri's opinion was read in that light. Tr. 737.

REPORT AND RECOMMENDATION - 5

The undersigned finds that from the face of it, Dr. Suri's opinion is unclear as to the exact nature of the limitation placed on plaintiff. It could mean as the ALJ found, that by stating "[h]e will need breaks every half-an-hour, to get up and change positions for at least 2-5 minutes, to relieve strain on his lower back," Dr. Suri was referring only to the prior sentence, in which it was stated that plaintiff could sit for "a full eight-hour workday." Tr. 588. In other words, Dr. Suri may have believed plaintiff only needed a break from sitting the whole day, and not from the work itself. On the other hand, it also could be that, as plaintiff asserts, Dr. Suri indeed felt that plaintiff would have to take "breaks every half-an-hour . . . in addition to normal breaks." Id. One simply cannot tell here.

The ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). However, it is only where the record contains "[a]mbiguous evidence" or it "is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate [further] inquiry" is triggered. Id.; Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence). It is true, as noted above, that if the evidence in the record admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Here, though, Dr. Suri's opinion is sufficiently unclear to prevent the undersigned from according such deference in this instance. Instead, the ALJ should have sought further clarification from Dr. Suri.

Because it is not clear what the exact extent and nature of the limitation Dr. Suri meant to convey here, and therefore Dr. Sutri's opinion on this issue was sufficiently vague to preclude the ALJ from interpreting it as he did, it also is not at all clear whether the ALJ's assessed

REPORT AND RECOMMENDATION - 6

residual functional capacity is wholly accurate.  Accordingly, remand to the Commissioner for further development of Dr. Suri's opinion, and re-consideration of plaintiff's assessed RFC in light of that further development, is warranted.

II.     The Hypothetical Question the ALJ Posed to the Vocational Expert

        If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

        An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

        At the hearing, the ALJ posed a hypothetical question to the vocational expert based on the same functional limitations as Dr. Suri set forth in the late March 2006 opinion. See Tr. 732. In response to that hypothetical question, the vocational expert testified that an individual with the same age, education and work history as plaintiff, and with the same functional limitations

REPORT AND RECOMMENDATION - 7

1   set forth in Dr. Suri's opinion, could perform other jobs in the national economy, assuming the

2   two-to-five minute limitation mentioned by Dr. Suri referred only to a need to change positions,

3   and not a requirement that an actual break be taken. See Tr. 737.  If that limitation indeed meant

4   the need for an actual break, however, then the vocational expert testified that such an individual

5   probably would be precluded from work. See id.

6           The ALJ found that based on the vocational expert's testimony – including his testimony

7   that plaintiff would be limited "to sitting for 30 to 45 minutes at a time" – plaintiff could perform

8   other work existing in significant numbers in the national economy. Tr. 34-35.  In addition, the

9   ALJ expressly stated he was rejecting the interpretation of Dr. Suri's opinion that plaintiff would

10  need a two-to-five minute break to change positions. Tr. 35.  Again, because, as discussed above,

11  the ALJ erred in rejecting that interpretation, and therefore erred in assessing plaintiff's residual

12  functional capacity as he did, it cannot be said that the hypothetical question the ALJ posed to

13  the vocational expert – as interpreted by the ALJ and as originally interpreted by the vocational

14  expert – was completely accurate.  Accordingly, remand for further consideration of this issue is

15  warranted as well.

16  III.    The ALJ's Failure to Ask the Vocational Expert About Conflicts With the DOT

17          The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only

18  insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala,

19  60 F.3d 1428, 1435 (9th Cir. 1995).  The ALJ, furthermore, has the affirmative responsibility to

20  ask the vocational expert about possible conflicts between her testimony and information in the

21  DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.

22  Thus, before relying on evidence obtained from a vocational expert to support a finding of not

23  disabled, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the

REPORT AND RECOMMENDATION - 8

DOT. <u>Haddock</u>, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.

Plaintiff argues that given the above affirmative duty to question the vocational expert in regard to possible conflicts between his testimony and the information contained in the DOT, the ALJ erred in failing to do so.  Defendant argues such failure on the part of the ALJ was harmless, because plaintiff has not alleged the vocational expert's testimony was actually inconsistent with the information contained in the DOT.  Whether or not plaintiff has so alleged, the undersigned finds the failure of the ALJ here was not harmless.[4]  This is because it is not at all clear whether the need to change positions for two-to-five minutes every half-hour <u>or</u> the need to take an actual two-to-five minute break every half-hour to do so, is consistent with the descriptions of the jobs contained in the DOT that the vocational expert found plaintiff could do.[5]  Indeed, as discussed above, if plaintiff is right, and Dr. Suri felt plaintiff needed to take an actual break instead of just change positions, than an actual conflict would exist, as the vocational expert testified that in all probability work would be precluded.

IV.    <u>Remand for Further Administrative Proceedings Is Appropriate</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

---

[4] An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." <u>Stout v. Commissioner, Social Security Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

[5] Thus, it is uncertain upon what, if anything, the ALJ based his determination that the vocational expert's testimony was consistent with the information contained in the DOT. <u>See</u> Tr. 35.  That is, even if the ALJ is correct, the record contains no evidence, vocational expert testimony or otherwise, that the need to change positions every half-hour for two-to-five minutes is encompassed by the descriptions set forth in the DOT of the jobs described by the vocational expert.

REPORT AND RECOMMENDATION - 9

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain in regard to plaintiff's residual functional capacity and his ability to

perform other work existing in significant numbers in the national economy, this matter should

be remanded to the Commissioner for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded

plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the

Commissioner for further administrative proceedings in accordance with the findings contained

herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

72(b), the parties shall have **fourteen (14) days** from service of this Report and

Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file

objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474

U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is

REPORT AND RECOMMENDATION - 10

1   directed set this matter for consideration on **August 13, 2010**, as noted in the caption.

2       DATED this 28th day of July, 2010.

3

4

5

6       Karen L. Strombom
7       United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 11